is Ragan v. Commissioner et al., number 09-1636. Mr. Weissman and Ms. Cain. Good morning. May it please the Court, Michael Weissman for Mr. Ragan. Judge Ambrose, I'd The issue before the Court is whether Mr. Ragan is entitled to equitable tolling, and of course there are two parts to that analysis. One is whether there is an extraordinary circumstance that prevented him from timely filing his petition. The second is whether he exercised reasonable diligence in asserting his federal rights. Now you went to, you basically were given, because of abandonment of counsel, 60 days additional, is that correct? That's right. Judge Brody afforded us 60 days to file the petition. And then you went on the 57th day saying we've got a problem getting the documents that we Correct. Obviously someone, the logical question is why wait until the 57th day? Why not have done that earlier? Well, we had been embarked on a process of trying to secure the documents as the letter we had sent to Judge Brody at that time indicated. We had tried the multiple prior lawyers. We tried courts. We tried the District Attorney's Office. And finally, before that period ran out, we approached Judge Brody. You know, and I guess this is a theme that maybe runs throughout this, the issues before the Court. Standing here today, I guess I wished I had done a few things differently back in 2000. I certainly didn't act perfectly, but the standard is not whether I was perfect or whether I was extraordinarily diligent. The standard, of course, is was I and Mr. Reagan reasonably diligent? And I think under all the circumstances, we did exercise reasonable diligence, especially because we relied on Judge Brody's grant of 60 days in which to file the petition. You initiated this discussion today by indicating that there were two issues, and you got what you viewed as the right result on the first issue. Correct. So that you're, while you're defending that, you in a sense prevail on that, so that the issue that you're attacking is whether or not you promptly enough. Correct. That was the issue. That's right. Would you move 102 days? Well, I'm calling it 99. The letter was sent by Mr. Reagan to my office on January 10, 2000, under Rule 6 of the Rules of Civil Procedure. I believe we're entitled to a three-day presumptive receipt of that letter. 99 days. In my view, it's 99. I'm willing to concede it might be 102. Beyond that, of course, once the letter came into the office, it doesn't mean it was necessarily read right away, and I actually don't have an independent recollection of when I personally became aware of the letter. But safe to say in early February, we filed our. Why did the district court think that you weren't, that there wasn't a due diligence? Was that the expression in pursuing the matter after the extended time commenced? You have to move with, what, due diligence? And she didn't think so. Why not? Yeah, you know, I'm not entirely clear on that. As the court knows, and it's in our brief, Judge Brody issued three opinions in this case. The first two contained legal errors. We pointed them out, and I would point out that one of the legal errors was significantly in our favor. She had granted equitable tolling on erroneous grounds. We pointed that out. Another example of our diligence in this matter. You know, I'm not sure how Judge Brody or why Judge Brody got it wrong, but clearly neglecting or ignoring the fact that we had moved, effectively moved for court intervention on day 57 and not, as she said, carelessly disregarded the 60-day deadline, I think  What's the standard review on that issue? On the issue of reasonable diligence? Reasonable diligence is a mixed question of law and fact, as any question of legal reasonableness is. Was counsel reasonable in the Strickland standard? That's a mixed question, and we've posited it as well as a mixed question of law and fact. Does that mean that we exercise plenary review? I'm sorry, I didn't hear you. Does that mean we exercise plenary review? Yes, a de novo review of that particular finding or conclusion by Judge Brody about reasonable diligence. That's right. Might you have submitted a petition on a timely basis and then amended it later? Well, you know, again, I think in retrospect that would have been the smart thing to do, but I think it was also reasonable to rely on the grant of 60 days that Judge Brody afforded us. I mean, was your thinking at the time that you were looking, it was such key evidence from the bystander? You know, I wish I could say that I recollect it perfectly or that there was key evidence we were looking for. I think it's more a matter of, you know, when we take our job seriously, it's obviously important stuff we're working on. As we told Judge Brody in our letter, the materials we were looking for constituted a, quote, historical record of the case. And I don't think it's responsible for habeas counsel to file a half-baked petition without having the historical record of the case. I have thought perhaps one of the reasons was that you really did need the crew statement. Well, the crew statement wasn't contained in the materials we got in that April 20th production. That came only later. Right. So we were looking for everything. It turned out we didn't even get everything. But once we got what we thought was everything, we then filed the next day. We reviewed the material and filed it. Now, time limits under AEDPA are important. And, of course, that's why there was one-year statute of limitations that was placed in AEDPA when it was enacted by the Congress. And this question here of what's reasonably diligent is also an important question. Absolutely. Since equitable tolling has been recognized, courts in the Supreme Court have been relatively hesitant to expand that reasonable diligence period beyond a narrow window. That's my reading. Have you argued, and if you haven't, why didn't you argue that in this particular case the scheduling of the conference on the 57th day, in effect, the court misled you as to how much time you had left so that perhaps the clock would start again. Yeah. And you would have a period of time which was relatively short from then until the time you actually filed. Well, the timing there is important. We filed our letter on the 57th day. Judge Brody didn't order a conference until April 10th, which would have been after the 60 days had already expired. Right. It seems to me that you could make a reasonable case that if you were questioning whether or not you needed to file the petition, the scheduling of that conference after the 60th day was a bit misleading, to say the least. Well, I don't think Judge Brody was trying to. Not intentional. I don't think there's anything that he says has to be intentional, but could it be an extraordinary circumstance? Sure. I think it is an extraordinary circumstance, and it's also, I think, you know, we're discussing that in the context of reasonable diligence. And, look, I remember clearly thinking, okay, she's convened this conference. We're going to talk about these issues. And, you know, I thought the 60-day clock had stopped, at least for that short period of time. Now, we should have maybe filed a motion for continuance as the district attorney. So, sure, that would have been a good thing to do, too. But, you know, we're talking about very subjective judgments here, what's reasonable. And, you know, I think the Court's familiar with, you know, the work of my office. And I think, you know, if anything, we're a reasonably diligent, if not reasonable, group of folks. What periods, you happen to know, and I was curious when I studied this case, what periods do courts usually allow when there's equitable diligence? Yeah, for reasonable diligence, that's an interesting answer to that question. We see Holland, where the petitioner filed in one day. And then we see Pace, and obviously that person was found diligent. We see Pace, which the Commonwealth relies on significantly, who filed 10 years after he was able to file. So, you know, I guess the answer is somewhere between a day and 10 years. You know, there are cases, mainly v. Felix, where the Supreme Court noted that two and a half months was reasonable for the filing of one claim, as opposed to an entire petition. We've got Kristen v. Wolf, which is a non-presidential opinion of this Court, where the 168 fed up at 512, noting that 90 days was a reasonable period to file. Where at 99 days, I think given the overall situation, given the Court's granting of the 60 days, we're within the realm of reasonable here. Is that where the Court erred, that it granted too short a period? No. No, I think Judge Brody's grant of the 60 days was perfectly reasonable. I don't think it was an error. I think her error was, in her last opinion, neglecting to notice that we had moved for that conference and accusing us of … Not having reasonable diligence. Right, and of carelessly disregarding. We certainly didn't disregard the deadline. We did something. We did what we had to do. Because you didn't carelessly disregard it, and you asked for the conference with reasonable diligence, you still didn't file the petition within 60 days. That's correct. So what was her error about extending the 60 days? Well, I think it was an implicit extension of the 60 days, and maybe that's on me for not having formally asked, please extend the 60 days. I know I was thinking at the time that that's what was happening. So I don't think Judge Brody made any errors back in 2000. I think the error was in her three opinions, including the last one with the careless disregard comment of … Mr. Wiseman. Yes. The Commonwealth seems to argue that in looking at reasonable diligence, you have to look at the entire time frame. Sure. What steps Reagan has taken in the entire collateral review process. Absolutely. What's your response to that? Yeah, and I think that's where they rely on Pace, and they say Pace waited years and he was found to be not diligent. I think we really contrast quite a bit with Pace. Pace waited 10 years from when he could file. He filed an untimely petition that violated state rules, and then even when that petition was resolved against him, he waited five months to file in federal court. You know, Mr. Reagan waited slightly less than two years from when he could have filed, and he filed within seven and a half months of the passage of the limitations period, and this court's opinion in La Cava talks about not faulting a petitioner for waiting nine months into a limitations period. So he moved. We wouldn't represent him then. He moved more quickly than the petitioner did in La Cava. I'd also point out that La Cava at 398 F3rd and 277 makes a connection between or equates the timely filing of a state post-conviction petition with diligence. And if you look at the language there, it actually says EDPA does that in imposing or in allowing tolling for a state post-conviction petition. And I think that's important because Pace didn't follow the rules. He violated the state rules. He filed late. We followed the state court rules and filed timely in state court. I see my light's off. I don't know if the court has any more now. I don't have any more. All right. Thank you, Your Honors. Thank you. Ms. Cain. May it please the Court, Helen Cain for the Commonwealth. Let me ask you. Yes. I mean, you've got counsel that's come in from the capital habeas unit. And, I mean, their reputation is, I think you would concede, is very good. They try to be reasonably diligent. And they weren't getting from your client the documents that they needed, they perceived that they needed. They went to the court before the deadline, which is what any of us would do. The question is maybe they went a little late, who knows. But the court on the 60th day issues an order that a conference be conducted. The conference takes place four days later. Your client doesn't even show up. The court then enters an order directing the commissioner to provide the missing documents. The documents come in a few days later, and one day after that they file. How in the world is that not reasonably diligent? First, Judge Ambrose, I have to correct a few things factually. Our office never received the notice of that meeting. That's why we weren't there. That's why you didn't show up on the 14th. Okay. Okay. We were then served with the order, and the documents were provided in the capital case on April 20th. And they filed on the 21st, a day later. That's correct. And, in fact, that shows that it wasn't necessary that they have this discovery request they made. Those documents, their request for discovery was an open-ended request that we furnished them with everything that was in our file. All of these documents had been provided in 1991 during the trial. The fact that they could not track them down did not prevent them from all of them. And, in fact, we did provide some of them. You've got to remember that the capital habeas unit was called in at the very end of this. The reason that they came involved was wasn't there an abandonment of counsel found by the court? That's what Judge Brody found, that the counsel that Mr. Reagan and his mother had hired abandoned him. After, and to remedy that, Judge Brody granted equitable tolling until the time that the Reagans discovered that the habeas petition that they were expecting but were not told that their counsel had filed, which makes this case different from Seitzinger, where a lawyer affirmatively misrepresented that he had done something. In fact, the district court in this case totally absolved the Reagans from any form of monitoring the progress of their case. That was the district court's prerogative. But we're talking about equitable tolling here, and I think that's one of the equities that we have to look at. Having been completely absolved of any duty to monitor his case while it was under Mr. — with Mr. Perry, after that point, it's our position that Reagan had a duty to monitor. At that point, he and his mother were informed by the capital defenders that the deadline was over. They'd missed it. And what they did was sit back and rely on the new counsel. Now, that may be appropriate. However, this court has said in other cases, and so has the Supreme Court said, that the thing to do at that stage is to file a protective petition, to file a bare-bones petition. And he said that, in hindsight, maybe that's what he should have done, even though it would have been woefully incomplete. The point being that if 60 days were granted and there was an issue, and let's assume you're right on everything you say, there was somehow miscommunication as to where they might otherwise find documents that they did not have. They go to the court. They ask the court for those. And once they get those documents, on the 70th day or 71st day, on the 72nd day, they file. And it would seem that that's somebody who's trying to do their job. And the thing I guess I don't understand is why it wouldn't just be the courtesy of saying, look, let's just let this drop. Because equitable tolling is to be applied sparingly. The defendant has the burden of proving that he's entitled to it. As was pointed out to the documents, the court said that the defendant was entitled to these additional documents, right? Let's look at what happened with those documents, Judge Ambrose. They, when they made the request for the documents, it was an open-ended request, much in what has occurred in McAleese. But the court entered the order on the 14th. Yes. However. Additional documents were provided by the 20th that initially were. Some of them, not all of them. That's right. The Cruz statement, for example, I guess, came later. But it just seems that all we're talking about here is just, on your end, just simple courtesy. I mean, these things happen. People, they're trying to do their job. If they had filed maybe on the 64th day or the 61st day, but they're at least trying. And they filed extremely quickly after they got the documents that they perceived that they needed, or at least some of the documents that they perceived they needed. I don't really get it. Well, Judge Ambrose, the test is whether the petitioner has exercised reasonable diligence throughout the entire time in both investigating and presenting his claims. Now, it's been said here this morning that the defendant waited only two years before he filed his first post-conviction petition in state court. That had ramifications for why, at the later stages, he had a shortened period of time. Any habeas counsel who doesn't represent his client throughout the entire proceeding from state and federal is confronted with a situation where there may have been things he would have done in another way. But he takes the case as he finds it. And I'd also like to point out, there were a number of claims from the direct appeal. There were seven issues that had been raised in state post-conviction review. All of those claims could have been placed in the bare-bones petition and filed. Now, I'd like to focus on what actually happened. I gather, though, in your view, we don't even reach the reasonable diligence issue because there shouldn't have been equitable tolling in the first place. Well, I would say the court found an extraordinary circumstance in that the court found that his state counsel abandoned him. So that's the extraordinary circumstance. Having found that was their diligence. Do you agree with that? That's my question, too. We did not appeal that, Judge Greenberg. Okay. What I would say is. You don't have to appeal it because you're not trying to upset the judgment.  Well, our point with. It's challenging. Our point with regard to that is that the district court was exceedingly generous in accepting Reagan's view and accepting all the evidence in light most favorable to the petitioner. Having done that. Do you then concede that this entire appeal is not based on the first question that counsel for the appellant raised, but strictly on the second? Yes. Well, you made our job easier. Okay. Why wasn't. Why weren't the series of extensions and conflicting orders. Why wasn't that a second extenuating circumstance? Well. I mean, it was at least at best or at worst. There's at least confusion here. Judge Fischer, I find it interesting that when the capital habeas unit went to Judge Brody and filed their motion for informal papyrus, they requested 60 days in order to file not one, but two federal habeas petitions. That was their assessment. Within that document, which is part of the joint appendix, they discussed the complexities of filing a habeas petition. They indicate that they are well-versed in this type of law, as opposed to other attorneys that aren't. Now, with that background, they assessed these cases and said, we can do this in 60 days. They also were aware that the deadline had passed at that point. So they knew it was imperative to prepare the petition with reasonable diligence. Now, as I pointed out, there were at least ten issues, claims, they could have placed in a petition. And I'd now like to return to what happened when the additional discovery was obtained. They went immediately to state court to exhaust their remedies, which they had to do in order to present a claim which had never been presented in their federal petition. In fact, the state court found there had been no discovery violation, and their entire claim was rejected on the merits. But that's what happens. You file your petition. You raise the issues that are ripe for review, that have been exhausted. And as McAleese says, the filing of the habeas petition is the beginning. Then you request discovery, and then you can investigate. To the extent that you find an additional claim, if it comes under the provision of the habeas statute, which talks about discovery of a new factual predicate, you can raise it, or you can return to state court. And that's what happened. Let me ask you this. If I could, Judge Greenberg. I listened to you carefully, and I understand what you said, but I don't know that you answered my question. Your question was why weren't a series of extensions considered extraordinary circumstances? There's nothing extraordinary about not being able to file something within a time frame. Wasn't it at least a bit misleading to counsel as to whether or not that 60-day limit was still in place? All counsel had to do was ask the court to clarify it. They did not. They proceeded under the assumption that they now had additional. The question is if you were in counsel's position, might you perceive that, in effect, you had been given additional time? Knowing that the statute had run, no. You're already on thin ice, as it were. You need to have an extraordinary circumstance, and the fact that a case is still in court. You mean if you were in his position and you said to the court on Day 57, we've got a problem, whether you're right or wrong that there was a problem, they perceived that there was a problem. Day 60, the court schedules a hearing. Day 64, there's a hearing, and you say you didn't get notice. That's why you didn't show up. But once you did find out, you produced the documents literally within days. In one case. Pardon me? In only one case, in only the capital case. Yes, and some of the documents. And then the next day they filed. Why wouldn't you, if the shoe was on the other foot, wouldn't you perceive that the court was going along with you? Because otherwise, what a court would have said, hey, you just came to me too late. It's too bad. You better file something on the 60th day or get the hell out of Dodge. I would not have assumed that I had additional time. I have two questions. First of all, counsel says that we're dealing with a mixed question of law and fact, and that we exercise a plenary review. Do you agree with that? I do. Okay. The other question is this. If we reverse this, what would the outcome, what would the consequence be? What would it be? A remand for the district court to consider the matter on the merits? Yes. The court had actually decided aspects of the actual innocence claim, but you're saying that we would basically go back and start all over. Is that what you're saying? I'm not aware that the court did decide aspects. The state court did. But the federal court has not. The motion for the 60-day extension was as to both habeas petitions, correct? Yes. Now, when was the petition filed in the death case? Same day, April 21st, 2000. Yes. The only one we have before us today, though, is the life case. Yes. And the reason is because the deadline had run in the life case. It had not run. It had not run in the death case. Right. What's the basis of the actual innocence claim? The actual innocence claim has to do with the alleged failure of the Commonwealth to disclose the identity of an eyewitness. And, in fact, we did disclose that. The state court found we did. It's funny. This very day I filed an opinion. I filed it yesterday. We released this very day dealing with actual innocence in the habeas case. We'll have to read it. The point is, in order to qualify for equitable tolling, there has to be extraordinary circumstance, which is outside of the control of the petitioner, and that prevented him from meeting the deadline. It's our position that once the capital defenders were involved in the case, the fact that it was difficult or that the case was complex is not an extraordinary circumstance. That's exactly what Judge Brody found. And if that's the case, then no ---- Wait a minute. Are you saying that's what you're contesting, extraordinary circumstances and not due diligence, or what? I'm contesting that once ---- I agree there was an extraordinary circumstance in terms of the attorney abandonment. But there's no extraordinary circumstance once we get past January 10th when the deadline was over. I know you're concerned about this case, but I would suspect that you're also concerned about what principle the outcome in this case might lead to. Aren't these facts somewhat unique? I don't think so, Judge Fischer. If they were, this is my point, they're not unique in that it's difficult to file a habeas petition in any case, and there are any number of life sentence prisoners who've missed the deadline and have been precluded from federal review. Brown v. Shannon is one of them. And my point, if every habeas petitioner can say it's too hard to get my claims together, then what's the point of the EDPA deadline? I'm looking down the road. This conviction was the, what do you call it? The aggravator. Aggravating circumstances in the death penalty case. Yes. So what's the concept? If you could get this one set aside, then that sets aside the death penalty. Yes. But his capital habeas petition is timely and is ripe for review. He has any number of issues within that case. In Christopher Williams, this court refused to find the fact that a case which was an aggravating circumstance to a death sentence constituted an extraordinary circumstance which warranted equitable tolling in and of itself. But the consequence of a win here would be that the basis, that was the only aggravating circumstance, I think, in the death penalty. I think that's correct. So somehow or other, this could get set aside. Of course, people don't understand it. A federal habeas doesn't set aside a conviction. It just says you've got to release them. Or retry them. But the conviction, it's sort of a bizarre division. That's what the court said. So what they're trying to do is to upset the death penalty by taking away the aggravating circumstance. But he will have ample opportunity to challenge the particular case in which he was sentenced to death. I understand that. But he won't have an opportunity in that case to challenge this case. That's correct. But if he wins the challenge here, then somehow or other, it's hard to picture all the things that could happen, but somehow or other it's a different result than that could affect the death penalty case. It could. You can't sit here now and figure this could happen. It's too much speculation. I'm out of time. Thank you very much. Thank you. I just wanted to ask you, Mr. Wolfman, am I correct about that, that in effect what you're doing is undercutting the death penalty case? Well, I hope you're correct that we're undercutting it, but I would point out that the case before this court is important because it served as an aggravating circumstance, but it's important independently because our view is he's innocent. The Cruz statement, which is the only thing we went back to state court to exhaust, we think shows he's innocent. What I meant to say is this. If the aggravating circumstance is destroyed, that in effect destroys the death penalty. In our view it would. Although it wouldn't destroy the conviction. No, of course not. No, it wouldn't. The Cruz statement, just to be clear, we didn't get that on the April 20th production. We got that ourselves from the city archives, so that was not something that came from the Commonwealth. Judge Fisher, I think the point of your questions finally sunk in while I was listening to your question, Ms. Cain. And I think the answer to your question may be found in the Ursinoli case, 546 F. 3rd, 269, at page 275 and 76. It's not exactly on point, but I think it's analogous. This court applied Taylor v. Horn, which said that when a district court makes an error in a calculation that's relied on by a litigant, the fact that there was an erroneous calculation by the court shouldn't be held against the petitioner. So I think that's pretty close to what you're positing here. When Judge Brody gave us the 60 days and then extended it further, we continued to rely on it just like my office did in the Taylor case. I just want to correct one concept here that Ms. Cain was referring to, discovery. Our view is what we asked for from Judge Brody and ultimately received was not discovery. It was what I like to call the historical record of the case. Habeas counsel can't even begin to do their job unless they have the documents that constituted the case. Discovery, I think, is something different. It's something beyond what we asked for. It's like asking for transcripts. That's not discovery. We asked for police reports and trial exhibits. That's not discovery. And then just finally, Judge Ambrose, you were asking Ms. Cain about were we correct in assuming that Judge Brody gave us extra time. And while I agree that I think we were correct in assuming, and I'm not even sure that's the standard, I think the question is was it reasonable for us to assume it. And that's the standard. Thanks very much. Thank you very much. Thank you to both counsel for well-argued cases. We'll take the matter under advisement and call the next case.